

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. PD-0704-16, PD-0705-16, PD-0706-16

### THE STATE OF TEXAS

### v.

### GORDON HEATH ELROD, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

**RICHARDSON, J., delivered the opinion for a unanimous Court.**

### <u>OPINION</u>

Appellee, Gordon Heath Elrod, was charged with fraudulent use or possession of

identifying information[1] and with two offenses of tampering with a governmental record.[2]

---

[1] TEX. PENAL CODE § 32.51(b)(1) provides, "A person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of identifying information of another person without the other person's consent."

[2] TEX. PENAL CODE § 37.10(a) provides, "A person commits an offense if he: . . . (4) possesses, sells, or offers to sell a governmental record or a blank governmental record form with intent that it be used unlawfully . . . ." TEX. PENAL CODE § 37.10(c)(2) provides, "An offense

Appellee filed a motion to suppress evidence seized by Mesquite police officers after they executed a search warrant at his hotel room. The trial court granted Appellee's motion to suppress, finding that the affidavit in support of the search warrant did not establish probable cause. The Fifth Court of Appeals agreed and affirmed the trial court's order.[3] We granted the State's petition for discretionary review.

We hold that the affidavit contained enough particularized facts given by a named informant to allow the magistrate to correctly determine that there was probable cause to issue a search warrant. The court of appeals erred by affirming the trial court's order granting Appellee's pretrial motion to suppress. We reverse the judgment of the Fifth Court of Appeals, vacate the trial court's order granting the motion to suppress, and remand the case to the trial court for proceedings consistent with this opinion.

---

under this section is a felony of the third degree if it is shown on the trial of the offense that the governmental record was: (A) . . . a license . . . or similar document issued by government . . . , unless the actor's intent is to defraud or harm another, in which event the offense is a felony of the second degree."

[3] *State v. Elrod*, Nos. 05-15-01219-CR, 05-15-01221-CR, 05-15-01222-CR, 2016 WL 3194808 (Tex. App.—Dallas May 27, 2016).

# THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT

Affiant, Investigator Smith with the Mesquite Police Department, provided the affidavit in support of the application for a search warrant to search Room 119 at the Executive Inn and Suites, located at 3447 E. Hwy 30, Mesquite, Texas.  Smith attested to the following events in his affidavit presented to the magistrate that are pertinent to this appeal:

> On Monday, April 27, 2015 at approximately 17:23 hours [5:23 p.m.] Officer Mobley, Officer McCloud, Officer Everett, and Officer Berg were dispatched to 4050 Gus Thomasson Rd (One Star Food Mart), Mesquite, Dallas County, Texas in reference to a Forgery.
>
> Upon arrival officers observed a heavy male subject walk out of the store towards a 1995 white Cadillac dev (TXLP: FKH2476).  Officers then observed the store clerk who was later identified as Kasumbi, Ahmed (W/M 5/31/80) come out of the business and state to officers "that's them" and pointed at the vehicle . . . .
>
> While officers were out with the three suspects, Kasumbi called dispatch and advised there was a female suspect involved and she was still at the location.  Officer[s] Everett, Mobley, and McCloud arrived at the location. Kasumbi stated the female who was identifying herself as Bazan,[4] Elizabeth with a paper ID was trying to cash a check.  Kasumbi advised the female had been at the location on Saturday 04/25/15 trying to cash the same check. Kasumbi stated he told the female that he couldn't cash the check on that day. Kasumbi advised the female came in today and was trying to cash the check.

---

[4] The affidavit spelled this name "Bazan" and "Bazen."  It is not clear which is the correct spelling.

Kasumbi stated the check was suspicious and he believed it was fictitious. Kasumbi provided officers with the check that the female was trying to cash.

The check appeared to be a payroll check from Texas Family Dental (10233 East Northwest Hwy Ste 510, Dallas, TX). The check showed to be paying a Monica Bazen the amount of $1,012. Officer Mobley made contact with the dental office which had the name of American Family Dental. Officer Mobley spoke with a Linda Dutton who advised they have a part time doctor with the name of Monica Bazen. Dutton advised they had not issued any payroll checks to Dr. Bazen recently. Dutton provided a phone number for Dr. Bazen.

Officer Mobley then made contact with Bazen, Monic [*sic*] by phone who advised she didn't have a payroll check from American Family Dental. Bazen advised she had not given anyone permission to cash a check with her name. Bazen stated she did wish to press charges against anyone using her person [*sic*] information.

Officers placed the female who identified herself as Stovall, Marsha (W/F 09/20/86) into custody. While searching Stovall's purse officers located a paper ID with Stovall's information. Officers located a paper ID with the name Bazan, Elizabeth (W/F 02/08/87), and a note book with several names, id [*sic*] numbers, social security numbers, and address[es]. Officers also located several credit cards inside Stovall's purse. . . Officers also located [a] clear glass pipe believed to be used for smoking methamphetamines. Stovall also provided officers with a TX driver license for Andricka, Lindsay (B/F 08/19/91) as well as a social security card with the same name, and a social security card with Monica Bazan on it in her back pocket.

* * *

Officers transported Stovall to Mesquite City Jail where she was booked in for Forgery with financial instrument and Fraudulent Use/Possession of Identifying Information without incident.

Officer Mobley placed the ID's Stovall had in her possession as well as the note book with social security numbers, ID's, names, addresses, the check, and credit cards into Mesquite Police Department property room as evidence.

On 4-28-15 at approximately 0830 hours [8:30 a.m.] Inv. Smith proceeded to the Mesquite Jail to interview Stovall. Prior to the interview Stovall was read her Miranda Warning to which she advised she understood. Stovall went on to advise that she had been staying in room #119 at the Executive Inn located at 3447 E Hwy 30 Mesquite, TX 75150 for the last few days prior to being arrested. Stovall advised that the counterfeit check, driver license and social security card bearing the name of Monica Bazan were all printed in the motel room. She advised that there are two desk top computers and four printers in the room. She advised that the occupants of the room were Alisha Davis,[5] her husband Gordon, and their two kids Jacob and Jeremiah. Stovall advised that they were printing counterfeit checks, driver licenses, and social security cards when she left the room on 4-27-15 at 1700 hours [5:00 p.m.]. Stovall advised that Gordon and Alisha are mail thieves and the information they counterfeited came from stolen mail which was also inside the motel room.

On 4-27-15 at approximately 1900 hours [7:00 p.m.] Officers Walzel and Berg made contact with Gordon in room #119 at the Executive Inn located at 3447 E Hwy 30 Mesquite, TX 75150. Officers advised they observed computers and printers in the room.

Your Affiant believes that there is further evidence inside the dwelling at 3447 E Hwy 30 #119 Mesquite, TX 75150. It is believed that the residence contains evidence of the offense of Forgery Financial Instrument, a violation of section 32.21 of the Texas Penal Code.[6]

The magistrate issued the search warrant at approximately 10:35 a.m. on April 28,

---

[5]This person's name has been spelled "Alisha," and "Alicia" in various court documents. It is not clear which is the correct spelling.

[6]Affidavit For Search Warrant, Exhibit A.

2015, and it was executed that day. Appellee was arrested the following day on April 29, 2015, pursuant to an arrest warrant.[7] Appellee filed a Motion to Suppress on or about July 31, 2015.

On August 28, 2015, the trial court held a hearing on Appellee's motion to suppress. Appellee testified regarding only the issue of standing to bring the motion. Appellee testified that he and his wife and children were renting room 119 in the Executive Inn, on Highway 30, in Mesquite, Texas. Defense counsel then offered into evidence the search warrant affidavit, urging the trial court to rule on the motion to suppress based on the four corners

---

[7] The Arrest Narrative incorporated within the arrest warrant affidavit, which was signed on April 29, 2015, listed the items found in the motel room as a result of the search:

Upon searching the room investigators located five computers, two hard drives and four printers/scanners. Investigators located a Citi Bank bag in the night stand. Inside the bag investigators located six fictitious TX driver licenses. Five of the driver licenses possessed Elrod's picture and the identifying information belonging to Don Deakin, Shane Potter, Allen Ward, Alejandro Valdes, and Rapplan Krockitt. There was one which possessed Davis' photo the identifying information belonging to Nickie Cumichael. All of the names appeared to coincide with names that were on checks also inside the bank bag. None of the checks belonged to Elrod or Davis and appeared to have been stolen. Located on the door to the bathroom was a blank blue piece of cardboard taped to the top of the door. It appeared to be the backdrop for taking counterfeit driver license photos. Investigators located several other pieces of identifying information belonging to other victims. The identifying information was located on mail, checks, and a computer generated employee list from an unknown business which possessed hundreds of employee's [sic] names, dates of birth and social security numbers. Also located in the room was identifying info [sic] belonging to Alicia Davis and Gordon Elrod. Investigators located over one thousand pieces of identifying information in the hotel room.

of the affidavit. There were no other witnesses presented, and there was no additional evidence offered.

## ARGUMENTS OF THE PARTIES

Appellee claimed in his motion to suppress that the search warrant, under which tangible evidence was seized, was in violation of his rights under the Texas and United States Constitutions and thus invalid because the supporting affidavit did not reflect probable cause. Appellee urged in his motion that probable cause was lacking because (1) the affidavit lacked sufficient underlying facts which would lead a neutral and detached magistrate to conclude that the alleged contraband was at the designated location, and (2) the affidavit failed to state sufficient underlying information to establish the credibility of the facts alleged by the affiant.

At the motion to suppress hearing, Appellee argued that, looking at the four corners of the affidavit, nothing Stovall said was corroborated by any independent investigation by the police. He argued that Stovall was not a credible nor reliable informant, and that a tip by an informant of unknown reliability standing alone is insufficient to support probable cause for an affidavit.

The State responded that there was probable cause to support the magistrate's decision to issue the search warrant because (1) the tip came from a named informant, not an

anonymous or confidential one, (2) it was made against Stovall's penal interest, (3) it was a detailed first-hand account of criminal activity, and (4) it was consistent with information the officers had observed for themselves.

For the reasons discussed below, we hold that the search warrant affidavit established sufficient probable cause to support the magistrate's decision to issue the search warrant.

## ANALYSIS

"The core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding 'probable cause' that a particular item will be found in a particular location."[8] In determining whether a warrant sufficiently establishes probable cause, this Court is bound by the four corners of the affidavit.[9] "[I]n interpreting affidavits for search warrants courts must do so in a common sense and realistic manner."[10] "[P]robable cause exists when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution in the belief that the items

---

[8] *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) (first citing *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007); and then citing U.S. CONST. amend IV; TEX. CONST. art. I § 9).

[9] *Lagrone v. State*, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987); *Lopez v. State*, 535 S.W.2d 643, 647 (Tex. Crim. App. 1976) (first citing TEX. CONST. art. I, § 9; then citing TEX. CODE CRIM. PROC. art. 18.01; then citing *Abercrombie v. State*, 528 S.W.2d 578 (Tex. Crim. App. 1975); and then citing *Carvajal v. State*, 529, S.W.2d 517 (Tex. Crim. App. 1975)).

[10] *Lopez v. State*, 535 S.W.2d at 647.

to be seized were in the stated place."[11]  "A magistrate, in assessing probable cause, may draw inferences from the facts."[12]  Therefore, although the magistrate's determination of probable cause must be based on the facts contained within the four corners of the affidavit, the magistrate may use logic and common sense to make inferences based on those facts.

A magistrate's decision to issue a search warrant is subject to a deferential standard of review, even in close cases.[13]  The rationale behind the rule requiring that we give great deference to a magistrate's determination that a warrant should issue was explained by the

---

[11] *Id.*; *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996) (stating that the allegations in the affidavit are sufficient if they would "justify a conclusion that the object of the search is probably on the premises.").

[12] *Lopez v. State*, 535 S.W.2d at 647; *see also Lagrone v. State*, 742 S.W.2d at 661 (noting that, "Rather than requiring a determination to be made within the framework of a factual vacuum, the reviewing magistrate is permitted to draw reasonable inferences from the facts supporting the averments.").

[13] *See Rodriguez*, 232 S.W.3d at 59–60 ("[I]n a doubtful or marginal case of [probable cause] a search under warrant may be sustained where one without one would fail." (quoting *United States v. Ventresca*, 380 U.S. 102, 106 (1965)); *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004) (rejecting a de novo standard of review in reviewing a magistrate's probable cause determination).  In *State v. Duarte*, 389 S.W.3d 349 (Tex. Crim. App. 2012)*,* we noted that the Supreme Court in *Aguilar v. Texas*, 378 U.S. 108 (1964) stated that a review "of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests.'" *Duarte*, 389 S.W.3d at 354 (quoting *Aguilar*, 378 U.S. at 110–11 (quoting *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932))).  Therefore, even in close cases we give "great deference" to a magistrate's determination of probable cause to encourage police officers to use the warrant process rather than make warrantless searches and later attempt to justify their actions by invoking consent or some other exception to the warrant requirement. *Duarte*, 389 S.W.3d at 354 (first citing *Omelas v. United States*, 517 U.S. 690, 699 (1996); and then citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

United States Supreme Court in *Illinois v. Gates*:

> [The process of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.[14]

We will therefore uphold a magistrate's decision to issue a search warrant "so long as he or she has a substantial basis for concluding" that probable cause exists.[15]

## A.    *State v. Duarte*[16]

Appellee urges that our holding in *State v. Duarte* supports his position that there were insufficient facts contained in the affidavit to support a finding of probable cause. In *State v. Duarte*, we addressed the issue of whether a tip by a first-time confidential informant of unknown reliability, standing virtually alone, provides a sufficient basis for a magistrate's probable cause determination. The affidavit at issue in *Duarte* recited that the affiant "receive[d] information from a credible individual who is currently facing pending criminal charges and provided the information with the expectation that his/her cooperation with law

---

[14] *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983).

[15] *Rodriguez*, 232 S.W.3d at 59–60.

[16] 389 S.W.3d 349 (Tex. Crim. App. 2012).

enforcement would, if proven valid, be called to the attention of authorities, for the possible dismissal of charges, or a favorable plea bargain sentence."[17] The affiant in *Duarte* represented that the informant was familiar with cocaine; had told the affiant that he/she had observed Gilbert Duarte in possession of cocaine within the past 24 hours at a certain address; and the affiant had confirmed that Duarte did in fact live at that same address.[18] The trial court granted the motion to suppress on the basis that the affidavit in support of the search warrant did not contain sufficient information to support the magistrate's finding of probable cause.[19]

This Court upheld the trial court's decision to grant Duarte's motion to suppress. We summarized the proper standard for reviewing whether an affidavit provides sufficient information that would support a finding of probable cause for the issuance of a warrant:

> The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant.[20] Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a

---

[17] *Id*. at 352.

[18] *Id*.

[19] *Id*. at 353.

[20] *Id*. at 354 (first citing *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984); and then citing *Rodriguez*, 232 S.W.3d at 60).

crime will be found at the specified location.[21]  This is a flexible, nondemanding standard.[22]  Neither federal nor Texas law defines precisely what degree of probability suffices to establish probable cause, but a magistrate's action cannot be a mere ratification of the bare conclusions of others.[23]  A magistrate should not be a rubber stamp.  "In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued."[24]

We noted in *Duarte* that probable cause exists if the information given by the informant "is corroborated, is a statement against penal interest, is consistent with information provided by other informants, is a detailed first-hand observation, *or* is coupled with an accurate prediction of the subject's future behavior."[25]  In *Duarte*, we emphasized that the informant's tip "contained no particular level of detail regarding appellee's premises or his criminal activity."[26]  We also distinguished the facts of that case from a situation where "there is a tip about a methamphetamine lab, or marijuana-growing operation, or crack-

---

[21] *Id*. (first citing *Gates*, 462 U.S. at 238;  and then citing *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011)).

[22] *Id*. (citing *McLain*, 337 S.W.3d at 272).

[23] *Id*. (first citing *Gates*, 462 U.S. at 239; and then citing *Rodriguez*, 232 S.W.3d at 61).

[24] *Id*. (citing *Gates*, 462 U.S. at 239).

[25] *Id*. at 356 (emphasis added) (internal citations omitted).

[26] *Id*. at 359 (citing *Long v. State*, 137 S.W.3d 726, 730–31 (Tex. App.—Waco 2004, pet. ref'd)).

cocaine dealing," or where "criminal activity is ongoing."[27] In *Duarte*, it was significant that there was nothing in the affidavit that suggested Duarte was engaged in drug-dealing. Thus, despite giving deference to the magistrate in *Duarte*, this Court held that the officer's "boilerplate affidavit" contained insufficient particularized facts about Duarte's alleged possession of cocaine to allow the magistrate to realistically determine probable cause to issue the search warrant.[28]

**B.      This case is sufficiently distinguishable from *State v. Duarte* to support the finding of probable cause here**

The magistrate judge in this case and the one in *Duarte* each had a close call to make regarding the issue of whether the affidavit supporting the search warrant provided sufficient probable cause. However, there are key differences between the facts of this case and those in *Duarte*. The affidavit in this case was not "boilerplate."

Significantly, this case does not involve an unnamed confidential informant or an anonymous tip. Citing to *Duarte*, the court of appeals held that "informants 'from the criminal milieu' do not enjoy any presumption of reliability."[29] However, Stovall was a named informant who was an eyewitness to criminal activity in which she was involved. After her arrest, Stovall gave a detailed statement to Investigator Smith that contained

---

[27] *Id*. at 357.

[28] *Duarte*, 359 S.W.3d at 357.

[29] *State v. Elrod*, 2016 WL 3194808 at * 3.

specific information regarding alleged ongoing criminal activity at a specified location—Room 119 at the Executive Inn. "We have held that when a probable cause affidavit *specifies a named informant* as supplying the information upon which probable cause is based, the affidavit is sufficient *if it is sufficiently detailed* to suggest *direct knowledge* on the informant's part."[30] Investigator Smith's affidavit is sufficiently detailed to suggest direct knowledge on Stovall's part. Stovall was able to give details about the alleged criminal activity because she was participating in it, and she had first-hand knowledge of the alleged counterfeit and mail and identity theft operation she was describing. The magistrate did not have to rely upon a presumption of reliability, but rather was able to assess Stovall's reliability based upon the details she provided. Pursuant to our decisions in *Matamoros v. State* and *Wilkerson v. State*, regarding named informants, we conclude that, under these facts, the magistrate did not err by *not* requiring more information to support Stovall's credibility or reliability.[31] The search warrant affidavit in this case contains more particularized facts than did the one in *Duarte*—enough to tip the scale the other way and support a finding of probable cause. Unlike *Duarte*, where the unnamed informant did not give particularized facts about Duarte's alleged possession of cocaine,

---

[30] *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995) (emphasis added) (citing *Wilkerson v. State*, 726 S.W.2d 542, 545 (Tex. Crim. App. 1986)).

[31] *Id*. ("[The named informant's] statement that appellant had confessed to him shows direct knowledge of appellant's culpability justifying a warrant to test appellant's blood."); *Wilkerson v. State*, 726 S.W.2d at 545 ("The information related by Winn suggests personal and direct knowledge on her part and is also entitled to credibility.").

Stovall, a named person, gave specific facts about Appellee's alleged ongoing counterfeit operation and mail theft scheme.

In addition, the information Stovall gave to Investigator Smith was not being traded for leniency, as it was in *Duarte*. Stovall's information was in the context of her statement to the police related to her own pending charges for an offense directly connected to the ongoing one she described to police as taking place in Room 119. Stovall revealed that the counterfeit check she used at the Food Mart was printed in the motel room, and that she had been in the motel room when counterfeit checks were being printed by Appellee and his wife. Her "tip" was more akin to a detailed confession surrounding her own involvement in the alleged counterfeit operation, which could be viewed as being against her penal interest.

Moreover, the trial court and the court of appeals disregarded facts contained in the affidavit which provided "independent" corroboration of Stovall's information. In Investigator Smith's affidavit he avers that, "On 4-27-15 at approximately 1900 hours [7:00 p.m.] Officers Walzel and Berg made contact with Gordon in room #119 at the Executive Inn located at 3447 E Hwy 30 Mesquite, TX 75150. Officers advised they observed computers and printers in the room." That encounter at the motel on April 27, 2015, has never been challenged, and the validity of that encounter is not before us. However, the timing of the officer's visit to the Room 119 on the night before Stovall's interview, and the lack of

explanation in the affidavit regarding that visit, was bothersome to the trial court[32] and to the court of appeals[33] such that they discounted its significance. Nevertheless, we must review the affidavit realistically, and with common sense.[34] Reasonable inferences may be drawn from the facts contained in the affidavit.[35] "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit."[36] We look to whether the magistrate's determination was based upon all reasonable and common sense inferences and conclusions that the affidavit facts support.[37] Reading these facts from a common sense perspective and not in a "factual vacuum,"[38] the magistrate could have reasonably and logically deduced that, although Investigator Smith did not literally refer to the motel visit by Officers Walzel and Berg as a "knock and talk," that was exactly what it was. This inference is based upon "certain common-sense conclusions about human behavior . . . [as] understood by those versed in the

---

[32] *State v. Elrod*, 2016 WL 3194808 at * 2.

[33] *Id.* at * 4.

[34] *Duarte*, 389 S.W.3d at 354 (first citing *Gates*, 462 U.S. at 236; and then citing *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012)).

[35] *Lagrone v. State*, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987).

[36] *Duarte*, 389 S.W.3d at 354–55.

[37] *Rodriguez*, 232 S.W.3d at 64.

[38] *Lagrone v. State*, 742 S.W.2d at 661.

field of law enforcement."[39] Therefore, the information the two officers gained from going over to Room 119 on April 27, the same evening the offense occurred, independently corroborated the facts Stovall gave in her detailed statement to Investigator Smith on April 28. Given these facts, the chronology of this independent corroboration is understandable.

The extensive and detailed statement given by Stovall, a named informant and witness to the ongoing criminal activity, showed that she had personal and direct knowledge of the matters she asserted.[40] That, not any presumption of reliability, is what made her a reasonably trustworthy source. The magistrate, therefore, correctly determined that the facts that Stovall gave established a "fair probability" that evidence of a particular crime would likely be found in Room 119 of the Executive Inn.[41]

---

[39] *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983).

[40] *Wilkerson v. State*, 726 S.W.2d at 545.

[41] *State v. Duarte*, 389 S.W.3d at 354; *Rodriguez v. State*, 232 S.W.3d at 60. The following narrative accompanying the arrest warrant is dated April 29, 2015. Although it could not have been considered with the search warrant affidavit, since it was drafted the day after the search warrant affidavit, it confirms the logical inference that the police went to the motel that same evening to investigate after arresting Stovall:

> On 4-27-15 Marsha Stovall w/f 9-20-86 was arrested after attempting to cash a forged check at One Star Food Mart. . . . At the time of her arrest Stovall was in possession of a counterfeit TX driver license, social security card and check. The patrol officers' investigation led Officers Walzel and Berg to room #119 at Executive Inn and Suites located at 3447 Hwy 30 in Mesquite. There officers contacted Gordon Elrod w/m 12-29-70 and Alicia Davis w/f 6-16-73 who were occupants in the room. Officers observed several computers and printers in the room. There was no action taken at that time and officers left the location.

**CONCLUSION**

Giving deference to the magistrate's decision in issuing the search warrant, we hold that the search warrant affidavit contained enough particularized facts about Appellee's alleged fraudulent use or possession of identifying information and alleged tampering with a governmental record to support a finding of probable cause to issue the search warrant. The court of appeals erred by affirming the trial court's order granting Appellee's motion to suppress. We reverse the judgment of the Fifth Court of Appeals, vacate the trial court's order granting the motion to suppress, and remand the case to the trial court for proceedings consistent with this opinion.

DELIVERED:        October 25, 2017

PUBLISH