**Opinion filed August 23, 2018**



# In The

# Eleventh Court of Appeals

_____

## No. 11-16-00227-CR

_____

## JIMMY WAYNE LEWIS, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 11793-D**

## M E M O R A N D U M   O P I N I O N

Jimmy Wayne Lewis, Jr., Appellant, pleaded guilty to possession of methamphetamine in an amount of 200 grams or more but less than 400 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(e) (West 2017).  Pursuant to a plea agreement, the trial court sentenced Appellant to confinement for twelve years in the Institutional Division of the Texas Department of Criminal Justice.  Prior to entering his plea of guilty, Appellant filed a motion to suppress evidence seized during the execution of a search warrant.

Appellant raises three issues challenging the trial court's denial of his motion to suppress. Appellant argues that information in the affidavit supporting the search warrant was stale, that the informant relied upon in the affidavit supporting the search warrant was without sufficient reliability and veracity, and that the affidavit supporting the search warrant did not contain sufficient information to connect the suspected items to Appellant's residence. We affirm.

*Background Facts*

Herbert Deaton was found dead on November 13, 2014, behind his home in Jasper County. The cause of death was determined to be "Homicidal Violence." Investigators identified Deaton's caregiver, Ashley Lewis,[1] and her husband, Robert Kelly Mounts, as suspects. Investigators discovered that, in early November, Mounts and Lewis had used Deaton's credit card to purchase an iPad and a computer, among other items, and were seen driving Deaton's pickup.

On December 12, 2014, Deaton's stolen pickup was found in the Kmart parking lot in Abilene.[2] In February 2015, Mounts and Lewis were apprehended for unauthorized use of a motor vehicle and credit card abuse. When apprehended, Mounts was using the identification of another person, James Burke, as his own. Mounts admitted that he killed Deaton, and in his confession, Mounts implicated Appellant as a person who assisted him after the murder. Mounts told officers that he contacted Appellant after the murder because Appellant "had connections" and "cooked meth and stuff like that."

Law enforcement officers used Mounts's confession as the basis for an affidavit in support of a search warrant for Appellant's residence. Texas Ranger Daniel Young provided an affidavit in support of the request for a search warrant.

---

[1]We refer to Ashley Lewis as "Lewis" in this opinion and to Appellant, Jimmy Wayne Lewis, Jr., as "Appellant."

[2]Abilene is located approximately 400 miles from Jasper County.

2

Ranger Young identified Appellant as Lewis's father. Ranger Young's probable cause affidavit provided in relevant part as follows:

On 2/9/2015, Lt. Morgan and Lt. Jordan interviewed Robert Mounts . . . . Mounts drove Deaton's truck to Merkel. [Appellant] drove Deaton's truck to the Kmart in Abilene. Mounts advised that he and Ashley stayed in Merkel until the day after Thanksgiving. Robert stated that they stayed most of their time at the house [that] belonged to a lady named Madonna who was a friend of [Appellant]. Robert advised that items from the truck were left at Madonna's house. After leaving Canton, Robert and Ashley drove to [Appellant's] residence in Merkel. Robert advised that he had left Deaton's wallet in the truck, and he was unsure of what [Appellant] had done with the wallet. Robert advised [Appellant] told him [Appellant] had done something with Deaton's wallet in a burn pile at [Appellant's] house. Robert advised that [Appellant] gave him a fake ID with the name James Burke on it. Robert advised that Burke was someone that [Appellant] knew from the Merkel area that had passed away a long time ago.

On 2/9/2015, Lt. Morgan conducted a second interview with Robert Mounts . . . . Robert advised that the iPad and computer that he purchased with Deaton's card were given to [Appellant] when they got to Merkel.

On 2/9/2015, Lt. Morgan conducted a third interview with Robert Mounts . . . . Robert stated that after he killed Deaton, he called [Appellant], and [Appellant] told Robert to bring the truck to Merkel and [Appellant] would help. . . . While talking with [Appellant], [Appellant] asked Robert if Robert had Deaton's credit card and told Robert to buy some other stuff because they may need the money later. Robert also stated that it was during this conversation that he told [Appellant] what had happened with Deaton. Robert remembered this conversation taking place before reaching Canton because he bought the iPad and computer due to [Appellant] telling him that they could use them to try and get some ID or contact[] some people. Robert stated that when they arrived in Merkel they went straight to [Appellant's] house and [Appellant] took the truck and parked it close by at Madonna's house. After taking the baby stuff out of the truck, it was parked in Madonna's garage. Robert stated that [Appellant] had provided him with the ID of James Burke from Maine, and that [Appellant] took Robert's ID and Social Security card. Robert stated

3

that [Appellant] also had all of Deaton's ID and stuff, because Robert had left it in the truck. Robert advised that he and Ashley stayed at Madonna's house while they were in Merkel.

A search warrant was issued on February 25, 2015. The search warrant sought: "2 I pads, laptop computer, identification belonging to Herbert DEATON, Robert MOUNTS or any other identification not belonging to [Appellant] or Misty TETMEYER: Keys to Herbert DEATON's Chevrolet pickup or any other personal belongings, credit cards, social security card belonging to Herbert DEATON or Robert MOUNTS." Officers executed the search warrant the same day it was issued. The search yielded, among other things, a laptop computer and a "[g]lass jar containing approximately 10 – 12 ounces of fluid believed to be 'methamphetamine.'"

*Analysis*

The Texas Court of Criminal Appeals recently addressed the analysis to be employed by appellate courts when assessing the propriety of a search conducted pursuant to a search warrant. *State v. Elrod*, 538 S.W.3d 551, 556–57 (Tex. Crim. App. 2017). As stated by the court:

> The core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding probable cause that a particular item will be found in a particular location. In determining whether a warrant sufficiently establishes probable cause, this Court is bound by the four corners of the affidavit. In interpreting affidavits for search warrants courts must do so in a common sense and realistic manner. Probable cause exists when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place. A magistrate, in assessing probable cause, may draw inferences from the facts. Therefore, although the magistrate's determination of probable cause must be based on the facts contained within the four corners of the affidavit, the magistrate may use logic and common sense to make inferences based on those facts.

4

A magistrate's decision to issue a search warrant is subject to a deferential standard of review, even in close cases. . . . We will therefore uphold a magistrate's decision to issue a search warrant so long as he or she has a substantial basis for concluding that probable cause exists.

*Id.* (citations, footnotes, alterations, and quotation marks omitted). Thus, when we review a magistrate's probable cause determination, we apply the deferential standard of review set out by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the magistrate's probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (alterations in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)); *see also State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011); *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

In his first issue, Appellant asserts that information in the affidavit supporting the search warrant was stale. Appellant contends that the information in the search warrant affidavit was stale because it described an isolated criminal incident occurring three months prior to the request for the search warrant. In his third issue, Appellant argues that the affidavit provided insufficient information for the trial court to reasonably conclude that the suspected items would be connected to Appellant's residence. We will address these issues together.

Under the probable cause standard, the affidavit must set out sufficient facts for the magistrate to conclude that the item to be seized will be on the described premises at the time the warrant issues and the search executed. *Crider v. State*, 352 S.W.3d 704, 707 (Tex. Crim. App. 2011) (citing *Schmidt v. State*, 659 S.W.2d 420, 421 (Tex. Crim. App. 1983)). "[T]he 'proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of

criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued.'" *Id.* (quoting *McKissick v. State*, 209 S.W.3d 205, 214 (Tex. App.—Houston [1st Dist.] 2006, pet ref'd)). For staleness with respect to the commission of a single offense, the question is whether there are facts in the affidavit to show that evidence relating to that offense is still expected to be at the described premises. *Id.* at 708.

The affidavit contains statements from Mounts to the effect that he gave evidence, which was the subject of the search warrant, to Appellant at Appellant's residence in Merkel in November 2014. Additionally, Ranger Young stated in the affidavit that he believed that Appellant "has possession of and is concealing" at the described premises the property items that were the subject of the search warrant. The search warrant was issued and executed on February 25, 2015. The trial court found that "[a]pproximately three months passed from the time Mounts and Ashley Lewis left [Appellant]'s residence and February 25, 2015." We disagree with Appellant that this time period rendered the information in the affidavit stale.

The Court of Criminal Appeals identified four factors in *Crider* bearing on the issue of staleness: (1) the type of crime; (2) the type of suspect, whether a "'nomadic' traveler, 'entrenched' resident, or established ongoing businessman"; (3) the type of item to be seized, whether it be "'perishable and easily transferred' . . . or of 'enduring utility to its holder'"; and (4) the place to be searched, that is whether it is "a 'mere criminal forum of convenience or secure operational base.'" 352 S.W.3d at 708 (quoting *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006)); *see Manual v. State*, 481 S.W.3d 278, 288–89 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). All four of these factors weigh in favor of the determination that the information in the probable cause affidavit was not stale.

The criminal activity at issue in this case was a murder and the theft of property from the deceased victim. The serious nature of the criminal activity is a

6

factor weighing in favor of a determination that the information was timely. The premises to be searched was Appellant's established residence. The items to be seized were not perishable or likely to be disposed of or consumed in a short amount of time, but rather they were of enduring utility to be held, particularly Mounts's identification being retained by Appellant. The magistrate could have reasonably inferred that the items that were sought in the search warrant were items that were reasonably likely to be retained by Appellant in his home approximately three months later.

Additionally, the trial court noted that "[d]isposition of the stolen items would likely bring attention to [Appellant] relating to a more serious crime (murder)." Although Deaton's wallet was purported to be destroyed at Appellant's home, if Deaton's identification and credit cards were in it, remnants of that evidence could have remained. And even if Deaton's identification was not destroyed with the wallet, it would not be unreasonable to infer that Appellant would retain Deaton's identification for future use, as he had done in the past with the identification of an individual named James Burke. The iPad and the computer were meant to be retained so that these items could be used to obtain money later. The trial court noted that the purpose of the purchase "suggested that the items might be retained for an extended period of time" and that "[t]he parties' plan to retain the items purchased with the stolen credit card indicated that they intended to engage in 'activity of a protracted and continuous nature.'" This determination is not unreasonable. Furthermore, the affidavit does not indicate that Mounts told officers that it ever became necessary for Appellant to dispose of the merchandise. Accordingly, in the absence of information that the items were disposed of, the trial court could have inferred that the iPad and computer were reasonably likely to still be at Appellant's residence approximately three months later.

Furthermore, the magistrate could have reasonably inferred that the suspected items were at Appellant's residence. "Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location." *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) (quoting *Gates*, 462 U.S. at 238). "[F]air probability does not require information that would persuade a reasonable person that the matter is more likely than not." *Id.* at n.21 (quoting 40 George W. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 5.03 at 292 (2d ed. 2001)). "The inquiry for reviewing courts, including the trial court, is whether there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found at a given location." *Id.* at 62.

Mounts stated in his first and third interview that, when he arrived in Merkel, he went to Appellant's home. In his second interview, Mounts said he gave Appellant the iPad and the computer when he got to Merkel. These items were meant to be retained by Appellant in case it became necessary for money later. Reading Mounts's statements together, the magistrate could have reasonably inferred that there was a "fair probability" that the iPad and computer would be found at Appellant's residence. The magistrate could have also reasonably inferred that there was a fair probability that Deaton's keys and personal belongings, including his credit cards and identification, along with Mounts's identification, were at Appellant's home. Mounts's statements indicate that Appellant took possession of the wallet at some point and that Appellant thereafter told Mounts that he "had done something with Deaton's wallet in a burn pile at [Appellant's] house." This directly connects Deaton's wallet to Appellant's home. The magistrate could have inferred that, if Deaton's identification and credit cards were contained in the wallet, there could be traces of that evidence at Appellant's home. The magistrate

8

could have drawn the same inference for Mounts's identification: that when Mounts gave Appellant his identification, Appellant retained it in his home for future use. Lastly, Mounts said that Appellant drove Deaton's pickup to Kmart in Abilene. When the pickup was found by police, it was locked and no keys were found. Accordingly, we overrule Appellant's first and third issues.

In Appellant's second issue, he contends that Mounts was without sufficient reliability and veracity for a magistrate to conclude that there was probable cause to issue the search warrant. Appellant places emphasis on the fact that Mounts is an implicated party to the crime and cites *Janecka v. State*, 739 S.W.2d 813, 825 (Tex. Crim. App. 1987), for the proposition that, where an informant is not a citizen informer but rather an implicated party to the crime, the informant's statements are not as reliable because they may be given under the pressure of an official investigation.

We conclude that the facts in *Janecka* are distinguishable. The informant in *Janecka* was a named informant that was an implicated party to an arson. 739 S.W.2d at 825. Her statements implicating another person could be viewed as an effort to "foist[] responsibility on another." *Id.* In this case, Mounts was not attempting to deny his involvement in Deaton's murder or the theft of Deaton's property. To the contrary, Mounts was a named informant who was an eyewitness to criminal activity in which he was involved. The Texas Court of Criminal Appeals has held "that when a probable cause affidavit specifies a named informant as supplying the information upon which probable cause is based, the affidavit is sufficient *if it is sufficiently detailed* to suggest *direct knowledge* on the informant's part." *Elrod*, 538 S.W.3d at 559 (quoting *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995)).

As was the case in *Elrod*, the probable cause affidavit in this case was sufficiently detailed to suggest direct knowledge on Mounts's part. Mounts was able

to give details about the alleged criminal activity because he was participating in it. *See id.* The magistrate did not have to rely upon a presumption of reliability, but rather was able to assess Mounts's reliability based upon the details he provided. *See id.* Furthermore, Mounts's status as a named informant was a factor supporting a finding of probable cause, as was the fact that he was giving a statement against his own penal interest. *See id.* at n.31; *State v. Duarte*, 389 S.W.3d 349, 356 n.30 (Tex. Crim. App. 2012).

Appellant also contends that the accounts of Mounts's three separate interviews in the affidavit are conflicting. Appellant notes that, in the first interview, Mounts said that "the items from the [pickup] were left at Madonna's house," and then in the next interview, Mounts said that he had given the iPad and the computer to Appellant. Further, Appellant points out that, in the third interview, Mounts said that Appellant had all of Deaton's stuff because Mounts had left it in the pickup. Contrary to Appellant's claim, Mounts's above statements can be read as being consistent.

If we read the three accounts of the interviews together, Mounts's statements with regard to the property subject to the search warrant are not inconsistent. Mounts is clear in his first and third interviews that, when he and Lewis first arrived in Merkel, they went straight to Appellant's home; nothing in the second interview contradicts this. A reasonable interpretation of the affidavit reveals that, upon arrival, they gave Appellant the iPad and the computer at Appellant's home because Mounts said that the iPad and computer "were given to [Appellant] when they got to Merkel." In both his first and third interviews, Mounts said that he had left Deaton's wallet in the pickup and that Appellant had taken possession of the wallet. Considering Mounts's statements as a whole, the trial court could have inferred that Appellant retained the wallet.

Furthermore, the affidavit contains statements from Lewis obtained during her interview with investigators. Her statements corroborate Mounts's account of what transpired after the murder regarding their travels to Canton and Merkel. The probable cause affidavit also contained information that video surveillance obtained from Walmart in Canton showed Mounts and Lewis purchasing items with Deaton's credit card. We conclude that the affidavit provided the magistrate with sufficiently reliable information to determine that probable cause existed for the issuance of the requested search warrant. Accordingly, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE

August 23, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.