**Affirmed and En Banc Majority, Concurring, and Dissenting Opinions filed December 10, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00154-CR

---

### THE STATE OF TEXAS, Appellant

### V.

### JOHN WESLEY BALDWIN, Appellee

---

**On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1527611**

---

### EN BANC DISSENTING OPINION

Broadly speaking, there are two errors with the majority's analysis. First, there is no adherence to the standard of review. The majority has simply supplanted its own judgment for that of the magistrate. And second, there is no adherence to the standard for probable cause. Rather than apply the flexible and non-demanding standard that the law requires, the majority has imposed a rigid and unrealistic

standard that will undo all of the dutiful efforts of law enforcement to obtain a search warrant through the proper channels.

## I.    The Magistrate's Decision

By issuing the search warrant, the magistrate implicitly found that there was probable cause to believe that a search of Baldwin's cellphone would likely produce evidence in the investigation of the homeowner's capital murder. *See* Tex. Code Crim. Proc. art. 18.0215(c)(5)(B). That implied finding was based on the following facts, all of which appear within the search-warrant affidavit:

1. The cellphone was found in Baldwin's sedan four days after the capital murder.

2. There was a nexus between the sedan and the capital murder, which supported a finding that Baldwin participated in the capital murder.

3. Based on the affiant's training and experience, criminals often use cellphones to coordinate their activities, which was significant here because the capital murder was committed by two individuals who planned their offense over at least two days.

The majority takes no issue with the first of these points, but the majority dismisses the second and third points, along with the legal precedent that attaches to them.

## II.    The Nexus Between the Sedan and the Capital Murder

The affidavit compiles the statements of three different witnesses who set forth the following facts about the sedan:

1. According to the homeowner's brother, who witnessed the capital murder, the two masked gunmen fled the scene in a white, four-door sedan.

2. According to a neighbor, there was a white, four-door sedan that was circling the neighborhood several times in the hours just before the capital murder. This neighbor's statement was corroborated by security footage.

3. According to a separate neighbor, there was a white, four-door sedan that was circling the neighborhood several times on the day before the capital murder. This neighbor was so alarmed by the sedan that she took a picture of it, and her picture captured the sedan's license plate.

The magistrate considered this evidence and made an implied finding that all three witnesses saw the same sedan, which was positively linked to Baldwin through the license plate. That implied finding is entitled to deference because a reasonable person could conclude that the separate sightings were too similar and too coincidental to be unrelated.

Yet the majority refuses to defer to the magistrate's implied finding because the first two witnesses did not record a license plate. The majority also characterizes the magistrate's implied finding as unreasonable because the first two witnesses only provided a general description of a sedan and, under the majority's restrictive view, their statements cannot be unified with the statements of the third witness unless there are more specific descriptions regarding the sedan, like whether it had a roof rack or horizontal stripes.

The majority's standard for probable cause cannot be reconciled with our jurisprudence. The standard is supposed to be "flexible and non-demanding." *See*

*State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011). But the majority has demanded such a high quantum of proof that nothing less than a hard certainty will suffice. That is plainly not the law. *See State v. Elrod*, 538 S.W.3d 551, 557 (Tex. Crim. App. 2017) ("The process of determining probable cause does not deal with hard certainties, but with probabilities.").

At the same time that the majority criticizes the so-called lack of evidence, the majority turns a blind eye to the portion of the affidavit that demonstrates the sheer unlikelihood that the witnesses saw three different sedans. This portion discusses the design of the neighborhood, which is described as having only a single point of ingress and egress. The affidavit further indicates that, once inside the neighborhood, there is just a single "circling boulevard with multiple small cul-de-sacs" branching out from that main boulevard.

These facts about the neighborhood support the following inferences:

1. Because thru traffic is not possible in this neighborhood, there is a reasonable probability that the vehicles seen most frequently there belong to the residents of the neighborhood, which would also tend to explain why two separate neighbors became suspicious of an unfamiliar sedan circling the area.

2. Because the neighbors' suspicions were raised on two consecutive days about sedans that were similar in appearance, there is a reasonable probability that the neighbors witnessed the same sedan, and that its driver was deliberately circling the neighborhood in preparation for the capital murder.

3. Because the sedan was positively linked to Baldwin through the license plate, there is a reasonable probability that Baldwin was the driver

4

witnessed by the homeowner's brother and that Baldwin participated in the capital murder.

All of these inferences stem from a logical and common-sense reading of the affidavit, which is how reviewing courts are supposed to approach the magistrate's determination of probable cause. *See Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). By not deferring to these reasonable inferences, the majority has usurped the role of the magistrate.

### III.    The Cellphone

The evidence showing that Baldwin participated in the capital murder is not sufficient by itself to support the search of his cellphone. *Cf. Riley v. California*, 573 U.S. 373, 401 (2014) (holding that the warrantless search of a cellphone cannot be supported under the doctrinal exception for searches incident to arrest). There must have been some additional evidence in the affidavit establishing probable cause that a search of the cellphone would likely produce evidence in the investigation of the capital murder. *See* Tex. Code Crim. Proc. art. 18.0215(c)(5)(B).

As to this point, the majority correctly observes that the affidavit does not contain any particularized evidence connecting Baldwin's cellphone to the capital murder. For example, there is no indication that the cellphone was used to film the capital murder as it was being committed, or that the cellphone had been used to communicate with the homeowner before the capital murder. The affidavit only contains generic recitations about the abstract use of cellphones.

These recitations were all based on the affiant's "training and experience," and included such generalizations as the following:

> 1. "Phones and smartphones such as the one listed herein are capable of receiving, sending, or storing electronic data."

5

2. Such phones are capable of containing "evidence of their [user's] identity and others."

3. "Cellular telephones are commonly utilized to communicate in a variety of ways such as text messaging, calls, and e-mail or application programs such as google talk or snapchat."

4. "It is common for suspects to communicate about their plans via text messaging, phone calls, or through other communication applications."

5. "Someone who commits the offense of aggravated assault or murder often makes phone calls and/or text messages immediately prior and after the crime."

6. "Often times, in a moment of panic and in an attempt to cover up an assault or murder[,] suspects utilize the internet via their cellular telephone to search for information."

7. "Searching a suspect's phone will allow law enforcement officers to learn the cellular telephone number and service provider for the device."

8. "Law enforcement officers can then obtain a subsequent search warrant from the cellular telephone provider to obtain any and all cell site data records, including any and all available geo-location information for the dates of an offense, which may show the approximate location of a suspect at or near the time of an offense."

For the most part, these statements are just "boilerplate recitations designed to meet all law enforcement needs for illustrating certain types of criminal conduct," and affiants should not rely on such generalizations because they run the risk "that insufficient particularized facts about the case or the suspect will be presented for a

magistrate to determine probable cause." *See United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).

The fifth statement listed above, which could just as easily be rephrased as "criminals often use cellphones," exemplifies the sort of generalization that does not suffice to establish probable cause, at least under contemporary standards where cellphones are still used by nearly everyone, law-abiding or not. *See Riley*, 573 U.S. at 385 ("These cases require us to decide how the search incident to arrest doctrine applies to modern cell phones, which are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy.").

Despite the breadth of these generic recitations, the fourth statement listed above is pertinent to the magistrate's determination of probable cause. This statement establishes that criminal suspects use cellphones for planning purposes, and that fact has some bearing here because the affidavit established that the capital murder was committed, not by a lone wolf, but by two men acting in concert who prepared for the offense over the course of two days. The magistrate could have reasonably concluded that this joint activity required a certain level of coordination and communication, the evidence of which might be discovered on a cellphone. *Cf. Foreman v. State*, — S.W.3d —, 2020 WL 6930819, at *4–5 (Tex. Crim. App. 2020) (concluding that the magistrate could reasonably infer that an auto shop was equipped with a video surveillance system because there were other facts in the affidavit showing that the auto shop had a heightened need for security).

The majority rejects the significance of the fourth statement listed above, supposedly under the belief that all boilerplate language is insignificant under *Martinez v. State*, No. 13-15-00441-CR, 2017 WL 1380530, at *3 (Tex. App.— Corpus Christi Feb. 2, 2017, no pet.) (mem. op., not designated for publication).

Setting aside for the moment that *Martinez* is an unpublished decision that has no precedential value, the majority misrepresents the actual holding of that case. The *Martinez* court did not hold that an affidavit containing boilerplate language was insufficient to support the magistrate's finding of probable cause. Quite the opposite, that court determined that an affidavit was sufficient to support the search of a cellphone because, in addition to certain boilerplate language regarding the abstract use of cellphones, there were facts in the affidavit showing that the defendant had committed the offense with other individuals, and there was some indication that these individuals had used cellphones to communicate with one another. The court only indicated that boilerplate language would be insufficient to support a finding of probable cause when such language was "standing alone," which was not the case there (or here).

Rather than suggest that boilerplate language is insignificant, the majority should have recognized the true holding of *Martinez*, which is that boilerplate language about cellphones can be considered in an analysis of probable cause when it is coupled with other facts, especially facts showing that the suspect committed an offense with another individual.

This reasoning is not novel. A court in another jurisdiction has already articulated a clear and objective test for this exact circumstance, stating that "an affidavit establishes probable cause to search a cell phone when it describes evidence of criminal activity involving multiple participants and includes the statement of a law enforcement officer, based on his training and experience, that cell phones are likely to contain evidence of communications and coordination among these multiple participants." *See United States v. Gholston*, 993 F. Supp. 2d 704, 720 (E.D. Mich. 2014).

That test was applied in another capital murder case, with facts very similar to the facts of this case. *See Johnson v. Arkansas*, 472 S.W.3d 486, 490 (Ark. 2015) ("Here, because Johnson was working with at least one other person when the homicide was committed, it is reasonable to infer that the cell phone that was in his possession was used to communicate with others regarding the shootings before, during, or after they occurred.").

A version of this test was applied in a separate case that contained many of the same boilerplate recitations as the affidavit in this case, though the result was different there because the facts did not show that the defendant had committed the offense with another individual. *See United States v. Oglesby*, No. 4:18-CR-0626, 2019 WL 1877228, at *4 (S.D. Tex. Apr. 16, 2019) (holding that a "bare bones" affidavit was insufficient to support a finding of probable cause because the affidavit contained no statements "directly referencing another individual's involvement in the incident").

Our court recently applied this test as well, but only through its reasoning, rather than expressly. *See Diaz v. State*, 604 S.W.3d 595, 604 (Tex. App.—Houston [14th Dist.] 2020, pet. granted) ("The affidavit stated that two men were involved in the home invasion and that police recovered several parts of one or more cell phones at the scene. From this, the magistrate reasonably could infer that the perpetrators possessed or utilized one or more cell phones before or during the planning or commission of the offense and that any recovered cell phones could have evidence of the offense.").[1]

---

[1] The petitioner in *Diaz* asserted two grounds for discretionary review. The first ground concerned a confidential informant and a challenge under *Franks v. Delaware*, 438 U.S. 154 (1978); and the second ground concerned a sufficiency challenge to the search-warrant affidavit. *See Diaz v. State*, No. PD-0712-20 (filed Aug. 11, 2020). The Court of Criminal Appeals granted the petition on the first ground only.

The reasoning in these collected authorities applies equally here. Based on all of the facts in the affidavit, the magistrate had a substantial basis for believing that a search of Baldwin's cellphone would probably produce evidence of preparation, which would also include evidence of the identity of the other person who participated in the capital murder.

For all of these reasons, I would conclude that the affidavit contained sufficient facts to support the magistrate's implied finding of probable cause. Because the majority reaches the opposite conclusion, I respectfully dissent.

/s/    Tracy Christopher
Justice

En Banc Court consists of Chief Justice Frost and Justices Christopher, Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, and Poissant. Justice Bourliot authored an En Banc Majority Opinion, which Justices Spain, Hassan, and Poissant joined in full, and which Justice Zimmerer joined as to Part II. Justice Zimmerer authored an En Banc Concurring Opinion. Justice Christopher authored an En Banc Dissenting Opinion, which Chief Justice Frost and Justices Wise and Jewell joined.

Publish — Tex. R. App. P. 47.2(b).