**AFFIRMED as MODIFIED and Opinion Filed July 11, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00154-CR

**MARCUS ANDREW BURKETT, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F1741007**

# MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

A jury found appellant guilty of possession with intent to distribute heroin and made a deadly weapon finding. The trial court assessed punishment, enhanced by a prior conviction, at fifteen years imprisonment.

In five issues, appellant argues that: (i) the evidence is insufficient to support his conviction, (ii) the trial court erroneously denied his motion to suppress, (iii) the trial court erroneously overruled his spoliation objection, and (iv) two aspects of the judgment should be reformed.

As discussed below, we reform the judgment, and as modified, affirm.

## I. BACKGROUND

Edward Marquez was stopped for a traffic violation after leaving a house that narcotics officers had under surveillance based on an earlier tip. Marquez was arrested when heroin was

recovered from his car. Marquez told the police that he purchased the heroin from appellant, gave them appellant's phone number, and then accompanied the officers to the house to confirm the location.

Several days later, the police executed a warrant at the house. Appellant and Candy Moreno were found together, locked inside the master bedroom. There was a handgun under the bed and the police recovered 6.35 grams of heroin, among other things.

The trial court denied appellant's motion to suppress the evidence seized at the house.

A jury subsequently found appellant guilty of possession with the intent to deliver heroin in an amount of four grams or more but less than 200 grams and made a deadly weapon finding. The court assessed punishment, enhanced by a prior conviction, at fifteen years imprisonment and entered judgment accordingly. Appellant moved for a new trial which was overruled by operation of law. This appeal followed.

## II. ANALYSIS

### A. First Issue: Is the evidence sufficient to support the conviction?

Yes, there was ample circumstantial evidence linking appellant to the contraband.

Appellant's first issue argues that the evidence is insufficient to support the conviction because it did not establish that he jointly possessed the heroin found in the residence. We disagree.

#### 1. Standard of Review and Applicable Law

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives full play to the factfinder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). And the factfinder is the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray,* 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

Appellant was charged as a principal and under the law of the parties with possession of a controlled substance with intent to deliver. To establish a defendant's possession of a controlled substance as a principal actor, the State must show that (i) the defendant exercised care, custody, control, or management over the contraband and (ii) the defendant knew that what he possessed was contraband. *See* TEX. HEALTH & SAFETY CODE § 481.112(d); *Robinson v. State*, 174 S.W.3d 320, 324 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

To convict under the law of the parties, the State must show that the defendant acted with the intent to promote or assist the offense by soliciting, encouraging, directing, aiding, or

attempting to aid the other person in the commission of the offense.  *See* TEX. PENAL CODE §7.02 (a)(2).

Possession may be joint.  *See Allen v. State*, 249 S.W.3d 680, 690 (Tex. App.—Austin 2008, no pet.).  While mere presence in the vicinity of the contraband is not sufficient to establish possession, presence at the scene is "a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant."  *See Thomas v. State*, 645 S.W.2d 798, 800 (Tex. Crim. App. 1983).

When the defendant was not in exclusive possession of the place where the contraband was found, the State must present additional evidence to affirmatively link the defendant to the contraband.  *Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.—Dallas 2003, no pet.) (citing *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995)).

Types of affirmative links may include the following non-exclusive factors:

(i) the defendant's presence when the search is conducted;

(ii) whether the contraband is in plain view;

(iii) the defendant's proximity to and the accessibility of the contraband;

(iv) whether the defendant was under the influence of narcotics when he was arrested;

(v) whether the defendant possessed other contraband or narcotics when arrested;

(vi) whether the defendant made incriminating statements when arrested;

(vii) whether the defendant attempted to flee;

(viii) whether the defendant made furtive gestures;

(ix) whether there was an odor of contraband;

(x) whether other contraband or drug paraphernalia was present;

(xi) whether the defendant owned or had the right to possess the place where the drugs were found;

(xii) whether the place where the drugs were found was enclosed;

(xiii) whether the defendant was found with a large amount of cash; and

(xiv) whether the defendant's conduct indicated a consciousness of guilt.

*See Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016).

"The number of links present is not as important as the 'logical force' or degree to which the links, alone or in combination, tend to affirmatively link the accused to the contraband." *Sloan v. State*, No. 05-18-00726-CR, 2019 WL 2317106, at *2 (Tex. App.—Dallas May 31, 2019, no pet. h.) (mem. op., not designated for publication) (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)).

The affirmative links test, however, is not a distinct rule of legal sufficiency. Instead, it is a guide to applying the *Jackson* standard in the circumstantial evidence context. *Tate*, 500 S.W.3d at 414 n.6.

### 2. The Evidence

The house where appellant was arrested was a suspected drug house on which investigators Shea Turner and Jeremy Epperson conducted surveillance for several days before the warrant was executed. During that time, Turner saw that the house had surveillance cameras, which he explained are typically used by drug dealers to watch for police. The officers also observed the type of traffic often seen in drug houses.

When the warrant was executed, Turner, Epperson and investigator Glenn Lang were present, along with other officers. As Epperson arrived at the master bedroom, he saw that the door had no handle and was locked with a deadbolt. When Epperson initially kicked at the door, it did not fully open because there was a safe behind it. Once the door was sufficiently opened, appellant and Moreno appeared to have just gotten up and were standing at the foot of the bed.

The bedroom was searched and the officers found women's handbags and both men's and women's clothing and shoes. A necktie was hanging on the hook in the master bathroom. Three different photographs of appellant, either posing with Moreno or others were displayed in the bedroom. Appellant's Texas identification card was also found there. Although the card showed a different address than the house, Epperson explained that people sometimes fail to change their address when they move.

A television monitor inside the bedroom projected images from the home's surveillance cameras, showing views of the street, backyard, driveway, and kitchen. There was a plate with a razor blade on the nightstand, and both items appeared to be covered with heroin residue. A bag of marijuana and two digital scales were found on the other nightstand.

There was another bag of marijuana inside the safe that had been blocking the door. A handgun was under the bed near some men's shoes.

The heroin that appellant was charged with possessing was found inside a purse underneath a pillow on the bed. The purse contained: (i) a large Ziploc bag with individually packaged baggies of tar heroin, (ii) a large bag containing a ball of tar heroin, (iii) a Ziploc baggie containing smaller individual-sized baggies of the type commonly used to package drugs, (iv) a roll of $1,196 in cash, (v) Nytol sleep aid tablets, (vi) a digital scale, (vii) paperwork with Moreno's name on it, and (viii) three photographs—one of appellant with Moreno, one of appellant by himself, and one with appellant, Moreno, and a child.

Epperson testified that Nytol is commonly mixed with heroin to make cheese heroin. He also said that guns and the types of paraphernalia found in the master bedroom are commonly found where drugs are sold.

Detective Ryan Slicker, an officer who was also a task force officer with the DEA, testified as the State's expert on the drug business. Slicker said that the packaging of the heroin, the empty

baggies, the gun, the surveillance cameras, and the deadbolt on the bedroom door were all indicative of a drug-delivery business. According to Slicker, the cash nature of the business makes drug dealers vulnerable robbery targets. As a result, the dealers frequently take precautionary measures such as guns, surveillance cameras, and deadbolts.

In Slicker's experience, it is uncommon for one person to run a drug-delivery business alone. This is because selling drugs consists of many tasks, such as answering calls, bagging and delivering drugs, and watching the house.

Appellant insists that the affirmative links analysis is "not readily applicable" because the heroin was found in Moreno's purse and thus in her exclusive possession. He also argues there is no evidence that he possessed the drugs and put them in Moreno's purse or passed them to her. In the alternative, he argues that he cannot be guilty as a party to possession with intent to deliver because nothing establishes that he knew the drugs were in Moreno's purse.

Notwithstanding appellant's assertion, the affirmative links analysis is particularly applicable in circumstantial evidence cases such as this this. *See Tate*, 500 S.W.3d 414 n.6. While appellant did not have exclusive possession of the place where the drugs were found, the evidence shows that his connection with the drugs was more than just fortuitous. A reasonable factfinder could infer that appellant knowingly possessed the heroin with the intent to distribute it. *See id.* at 414 (factfinder may infer knowledge or intent if there are sufficient facts and circumstances justifying such an inference.)

Specifically, appellant was present, in a locked enclosed space where other drugs and paraphernalia were in plain view. The articles of men's clothing in the room, the photographs of appellant with Moreno displayed in the room and in Moreno's purse, and the fact that he and Moreno appeared to have just gotten out of bed suggest that Moreno was more than just a passing acquaintance. Likewise, the surveillance equipment, gun, and deadbolt suggest an awareness that

the sale of drugs was taking place and was a dangerous endeavor. Appellant was in close proximity to the drugs and the gun and his identification card was in the room. Thus, the cumulative force of appellant's presence, combined with this other evidence linking him to the heroin, was sufficient to prove possession with intent to deliver beyond a reasonable doubt. *See Thomas v. S*tate, 645 S.W.2d 798, 800 (Tex. Crim. App. 1980). Appellant's first issue is resolved against him.

**B.      Second Issue:   Did the trial court err by denying the motion to suppress?**

No. Adequate non-conclusory evidence provided a substantial basis for establishing probable cause supporting the search warrant.

Appellant's second issue argues that the trial court erred by denying his motion to suppress because the affidavit submitted in support of the search warrant consisted of statements that were too conclusory to establish probable cause. Specifically, appellant argues that the affidavit was conclusory because: (i) there is no information concerning the date on which the initial tip was received, the identity of the tipster, or any facts regarding the reliability of the tipster. He also argues that the affidavit fails to state that (i) the heroin in Marquez's car was tested, (ii) Marquez was credible, (iii) Marquez paid money for the heroin, and (iv) Marquez saw any evidence of drug dealing at the house.

**1.      Standard of Review and Applicable Law**

A search warrant may not issue unless it is based upon probable cause, established by a sworn affidavit. U.S. CONST. amend. IV; TEX. CODE CRIM. PROC. ANN. art. 18.01(b); *State v. Jordan*, 342 S.W.3d 565, 568 (Tex. Crim. App. 2011). The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).

"Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a 'fair probability' that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued." *Jordan*, 342 S.W.3d at 568–69.

"The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners." *Id.* (citing *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)).

The focus is not on what other facts could or should have been included in the affidavit; rather, the focus is on the combined logical force of facts that are actually in the affidavit. *Duarte*, 389 S.W.3d at 354–55.

We typically apply a bifurcated standard of review to a trial court's ruling on a motion to suppress by giving almost total deference to the trial court's determinations of fact and reviewing de novo the trial court's application of law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011).

Where, as in this case, the motion to suppress is based on a magistrate's decision to issue a warrant, there are no credibility determinations to which we must defer because the trial court is constrained to the four corners of the affidavit. *See State v. Webre*, 347 S.W.3d 381, 384 (Tex. App.—Austin 2011, no pet.).

Nonetheless, in reviewing the magistrate's decision to issue a warrant, we view the magistrate's decision to issue the warrant with great deference. *See Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012). As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *Id.* In doubtful or marginal cases, the magistrate's determination should prevail. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

## 2. The Search Warrant

Although appellant complains about the unidentified tipster, the warrant was not solely based on tipster information. Instead, the tipster information precipitated police surveillance of the home. During that surveillance, prior to the day Marquez was arrested, officers observed subjects sitting in vehicles for a brief period and surveillance cameras.

While conducting further surveillance on May 25, 2017, officers saw Marquez's car stop at the residence for a brief time and then leave. Turner thought this was consistent with purchasing narcotics, so he followed Marquez and pulled him over for traffic violations. The affidavit in support of the warrant then states:

> Officer Harris discovered a small amount of Heroin after searching the vehicle with Marquez's consent. Marquez was arrested and interviewed at the Mesquite Police Station by Investigator Turner. Marquez was read the Miranda warning and agreed to speak with Investigator Turner. Marquez advised that he purchased the Heroin immediately before he was stopped. Marquez advised that he purchased the Heroin from a house on Susan Dr. and offered to show investigators the exact location. Marquez advised he purchases Heroin from a W/M he knows as "Tweety" at that location. Subject Marquez then pointed out 3735 Susan Dr. to Investigator Turner and your affiant as the location where he purchased Heroin. This was consistent with what Investigator Turner observed during surveillance. The phone number that subject Marquez advised he calls to arrange the purchase of Heroin also shows an owner at 3735 Susan Dr.

Reading the warrant as a whole, it was based on much more than just an initial tip. And "while information from an unnamed informant alone does not establish probable cause, the informant's tip combined with independent police investigation may provide a substantial basis for a probable-cause finding." *Lowery v. State*, 843 S.W.2d 136, 141 (Tex. App.—Dallas 1992, pet. ref'd). We thus reject appellant's arguments about the unnamed tipster.

Likewise, appellant's arguments about Marquez are unpersuasive. Marquez was a named informant who was an eyewitness to criminal activity in which he was involved. *See State v. Elrod*, 538 S.W.3d 551, 558–59 (Tex. Crim. App. 2017). "[W]hen a probable cause affidavit specifies a named informant as supplying the information upon which probable cause is based, the

affidavit is sufficient if it is sufficiently detailed to suggest direct knowledge on the informant's part." *Id.* at 559.

Here, Marquez not only purchased the heroin from appellant, he also accompanied officers to the home described in the warrant and confirmed that this is where the purchase occurred. He also provided the telephone number he called to contact appellant for a drug sale. Calls to that number showed that the phone was owned by someone at the location to be searched.

We conclude that a commonsense reading of the information within the four corners of the affidavit show a substantial basis for concluding there was sufficient probable cause to issue the warrant. Appellant's second issue is resolved against him.

**C.     Third Issue:     Did the trial court erroneously overrule appellant's spoliation objection?**

We reject the issue because the trial court excluded the evidence anyway.

Appellant's third issue argues that the trial court erroneously overruled his spoliation objection. Although the court overruled the spoliation objection, the court excluded the complained-of evidence based on TEX. R. EVID. 404(b). Because the evidence was excluded, there is no basis for complaint on appeal. *See* TEX. R. APP. P. 44. We thus resolve appellant's third issue against him.

**D.     Fourth and Fifth Issues:  Should the judgment be reformed?**

Appellant's fourth and fifth issues argue that the judgment should be modified to state "N/A" where it shows a plea and a finding on a second enhancement paragraph. The State agrees. We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

Here, the record reflects that there was no second enhancement paragraph and thus the notation concerning a plea and a finding on such a paragraph is in error. We therefore sustain appellant's fourth and fifth issues and modify the judgment accordingly.

### III. Conclusion

We sustain appellant's fourth and fifth issues and modify the judgment to state "N/A" concerning the plea and finding on a second enhancement paragraph and resolve appellant's remaining issues against him. As modified, the trial court's judgment is affirmed.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
180154F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARCUS ANDREW BURKETT,
Appellant

No. 05-18-00154-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F1741007.
Opinion delivered by Justice Whitehill.
Justices Partida-Kipness and Pedersen, III
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

the notation concerning the plea and finding on a second enhancement paragraph
is deleted and replaced with "N/A"

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered July 11, 2019