**Affirmed and Memorandum Majority and Dissenting Opinions filed May 26, 2022.**



In The

# Fourteenth Court of Appeals

NO. 14-20-00223-CR
NO. 14-20-00224-CR
NO. 14-20-00225-CR

**JOSHUA ANTEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

## On Appeal from the 182nd District Court
## Harris County, Texas
## Trial Court Cause Nos. 1551742, 1551743, and 1551744

## MEMORANDUM MAJORITY OPINION

Appellant Joshua Antee appeals his three convictions for possession of child pornography. In his sole issue, appellant complains that trial court reversibly erred when it denied his motion to suppress evidence obtained from his cell phone. Guided by recent binding precedent from this court, we conclude that the trial court did not err in denying the motion to suppress. We modify the judgments to

reflect that appellant pleaded not guilty and affirm them as modified. Tex. R. App. P. 43.2(b).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 7, 2016, undercover narcotics officer, Luis Valle II, with the Houston Police Department (HPD), after having arrested and filed charges against appellant for "Possession of a Controlled Substance with Intent to Distribute/Deliver",[1] secured a search warrant for a cell phone discovered in appellant's possession when he was arrested on July 27, 2016.

In Valle's search-warrant affidavit, he describes in detail his interactions with appellant leading to appellant's arrest. Valle's affidavit sets out how he engaged with appellant after discovering appellant's chatroom post advertising the sale of "powder cocaine." Valle's affidavit states:

> Officer Valle made contact with [appellant] through the on-line chatroom and asked [appellant] how much was two "8-balls" of powder cocaine (street slang for two 3.5 gram baggies of powder cocaine). [Appellant] replied with a price of $200. Officer Valle then exchanged phone numbers with [appellant] and continued their conversation via text messaging. The number that [appellant] provided Officer Valle was [713-XXX-XXXX]. Officer Valle made contact with [appellant] via text messaging which [appellant] identified himself as "Carlito". Officer Valle informed [appellant] that they could meet near Gulf Freeway and Wayside at a Walmart parking lot. [Appellant] stated he would be coming from the north side of town and it would take him some time to get to the Gulf Freeway and Wayside. Officer Valle and [appellant] continued the text messaging conversation as [appellant] was asking if Officer Valle used powder cocaine or sold it, then [appellant] wanted to know if Officer Valle could provide any Heroin during their meeting.

---

[1] The State charged the controlled substance offense in a separate indictment, an action that is not under review in this appeal. *State v. Antee*, Cause No. 1518349 (182nd District Court, Harris County).

2

[Appellant] repeatedly asked Officer Valle if he used cocaine and that he would let Officer Valle "sample" the product during their meeting. Then [appellant] provided the following text message "ok cool. Don't take no offense, I say this to everybody the first time we meeting. If you try to rob me, you gonna get shot, if you a cop, you gonna get shot at least twice. This is business, so I expect you to be cool, if not, we will have problems. I'm looking for good customers. If you cool with all that, just reply cool, if not, lose my number".

The affidavit then explains how Officer Valle, with the assistance of his narcotics team, set up and carried out the drug-buy bust of appellant on July 27, 2016. It states that appellant described to Officer Valle in advance the vehicle he was driving, that after appellant arrived at the final agreed-upon location police detained appellant, and that members of the narcotics team located in plain view on the driver side floor-board were two plastic baggies with a white powdery substance later determined to be cocaine. Valle's affidavit then explains the apprehension of appellant's phone:

Officer Valle then instructed the units to listen for a cell phone to ring as Officer Valle called the number that was provided to him from Defendant Antee. The marked units advised Officer Valle that a cell phone was ringing and that this cell phone was in Defendant Antee's possession. Officer Valle had the marked units verify the number on Defendant Antee's phone and it matched that of Officer Valle's City of Houston cell phone number.

Based on Valle's affidavit a Harris County magistrate issued the warrant for the search of the cell phone being stored in HPD's property room. Tracking language in Valle's affidavit, the warrant permitted search on the phone for:

1.   Any photographs and videos,
2.   Any text or multimedia messages (SMS and MMS).
3.   Emails

3

4.     Internet browsing history, GPS history

5.     Any contact information, including but not limited to email addresses, physical addresses, mailing addresses, phone numbers stored in the phones or computers,

6.     Documents and evidence showing the identity of ownership and identity of the users of those described items.

7.     Computer files or fragments of files, photographs. videos, CD-ROM's, CD's, DVD's, thumb drives, SD Cards, flash drives or any other equipment attached or embedded in the above described device that can be used to store electronic data.

On November 7, 2016, Officer Douglas Ertons, an HPD officer assigned to the Houston Forensic Science Center began executing the cell phone search. As he recalled at trial, before copying the contents of the phone, when Ertons began previewing the contents of the cell phone data, he noticed what appeared to be child pornography.  Ertons discontinued his search and contacted Valle to advise him that an additional search warrant was necessary for the search of child pornography.  When the second search warrant was executed, the police confirmed the contents of the phone contained child pornography. This spurred another warrant, for appellant's arrest and for the search of his home.

Appellant was charged by three indictments for possession of child pornography. Under each case, appellant filed global motions to suppress his arrest, evidence, and statements seized or obtained in violation of his rights under the United States and Texas Constitutions and the Code of Criminal Procedure. After the cases were consolidated for trial, appellant filed a second motion to suppress asserting lack of probable cause to search his cell phone following its seizure on July 27, 2016, and in support of suppression under *Franks v. Delaware*, asserting Officer Valle's affidavit contained false or misleading statements. 438 U.S. 154 (1978). The court heard the suppression motion at trial.

4

Appellant waived his right to jury trial and pleaded "not guilty."[2] The first two days of appellant's consolidated bench trial comprised of testimony, argument, and the court's ruling on appellant's motion to suppress. After the trial court denied appellant's motion to suppress, the guilt-innocence phase of trial proceeded with the admission of evidence discovered on appellant's cell phone. The trial judge found appellant guilty in each of the three cases and sentenced him to imprisonment for 8 years for each offense, to run concurrently.

## II. MOTION TO SUPPRESS

Appellant challenges the trial court's ruling on his motion to suppress cell phone evidence on the sole ground that the initial search warrant was impermissibly overbroad, thus tainting evidence admitted at trial obtained by the State under subsequent search warrants. Our resolution of this issue is guided by this court's holding in *Diaz v. State*, a case recently affirmed by the Court of Criminal Appeals. 604 S.W.3d 595, 603 (Tex. App.—Houston [14th Dist.] 2020), *aff'd*, 632 S.W.3d 889 (Tex. Crim. App. 2021).

When reviewing a magistrate's decision to issue a warrant, appellate courts apply a highly deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011). When ruling on a motion to suppress evidence obtained pursuant to a search warrant, a trial court is limited to the four corners of the warrant and affidavit supporting the warrant. *Id.* at 271. In turn, the reviewing court's determination cannot be based on facts not

---

[2] Contrary to appellant's "not guilty"-pleas and the trial court judgments of guilt as reflected in the reporter's record, the written judgments signed by the trial court state appellant entered pleas of guilty and that terms of a plea bargain were "without an agreed recommendation–court trial." Accordingly, we must modify the judgments "to speak the truth." *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (approving reasoning of *Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd)).

contained within the four corners of the supporting affidavit. *Diaz v. State*, 632 S.W.3d 889, 894 (Tex. Crim. App. 2021)(affirming the court of appeals judgment after first identifying supporting evidence within the four corners of the affidavit for a proposition the court of appeals had only found evidentiary support for in testimony at the suppression hearing). The affidavit is interpreted in a non-technical, commonsense manner drawing reasonable inferences solely from the facts and circumstances contained within the four corners of the affidavit. *See State v. Elrod*, 538 S.W.3d 551, 554 (Tex. Crim. App. 2017); *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). Although a magistrate may not baselessly presume facts that the affidavit does not support, he or she is permitted to make reasonable inferences from the facts recited in the affidavit. *Foreman v. State*, 613 S.W.3d 160, 164 (Tex. Crim. App. 2020), *cert. denied*, 141 S. Ct. 2632, 209 L. Ed. 2d 757 (2021). Probable cause is a flexible and non-demanding standard, and as long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *Diaz*, 604 S.W.3d at 603).

The average cell phone, capable of storing large volumes of personal data, performing an array of functions, used in multiple spheres of an individual's life, has gained special protection in the search-and-seizure jurisprudence of federal and state courts. *See State v. Granville*, 423 S.W.3d 399, 408 (Tex. Crim. App. 2014); *see also Riley v. California*, 573 U.S. 373, 386, 134 S. Ct. 2473, \*\*, 189 L. Ed.2d 430, \*\* (2014). Our court has recently held that "generic, boilerplate language [in an affidavit] that a smart phone may reveal information relevant to an offense and that suspects might communicate about their plans via cellphone is not sufficient to establish probable cause to seize and search a cellphone." *State v. Baldwin*, 614 S.W.3d 411, 417-18 (Tex. App.—Houston [14th Dist.] 2020, pet. granted); *aff'd*,

No. PD-0027-21, 2022 WL 1499508, — S.W.3d — (Tex. Crim. App. May 11, 2022). Rather, probable cause to search a cell phone must be established through "a connection between the cellphone usage and the offense." *Baldwin*, 614 S.W.3d at 418; *Diaz*, 604 S.W.3d at 604. We have held that such an affidavit "must usually include facts that a cell phone was used during the crime or shortly before or after." *Baldwin*, 614 S.W.3d at 415 (citing *Diaz*, 604 S.W.3d at 603).

The affidavit in appellant's cases provides a variety of facts that connect the cell phone to the narcotics offense. Specifically, the affidavit supplies facts describing how the cell phone in question was used by appellant to (1) send messages in connection with the sale of cocaine, (2) threaten Officer Valle in his capacity as a police officer, (3) set up a time and location to conduct the cocaine sale, and (4) assist Valle in identifying appellant and his vehicle in furtherance of meeting to make the sale. Such facts—showing appellant used his cell phone at multiple instances throughout the underlying offense, an attempted drug sale— starkly contrast from those in our en banc decision recently affirmed by the Criminal Court of Appeals in which we discovered "no facts showing []that a cell phone was used during the crime or shortly before or after[]". *See State v. Baldwin*, 614 S.W.3d at 418.

Though appellant concedes that the "affidavit may have provided probable cause" to search for *text messages* on appellant's cell phone," he argues that the warrant allowed for an unfettered and unlimited search of the phone's photographs, videos, emails, browsing history, contact information, and "[c]omputer files or fragments of files, photographs, videos, CD-ROM's, CD's, DVD's, thumb drives, SD Cards, flash drives".

In *Diaz*, we explained that if a warrant permits a search of "all computer records" without description or limitation, it will not meet Fourth Amendment

particularity requirements; however, a search of computer records that is limited to those related to the offense set forth in the affidavit is appropriately limited. *Diaz*, 604 S.W.3d at 605 ("the warrant must affirmatively limit the search to evidence of specific crimes **or** types of material.") (emphasis added).

Appellant's position, much like the appellant in *Diaz*, is premised on the contention that particularity requirements are stricter than the law demands, so as to render unconstitutional a search of a cell phone used to commit an offense because the data permitted by search might include some non-offense related data. *Diaz*, 604 S.W.3d at 606 ("Though the general object of the warrant—a 'forensic analysis' of specific categories of electronic data stored on appellant's cell phones—'tacitly encompasses electronic data that might, upon a thorough forensic examination, be identified as being non-offense related,' we do not construe the warrant and the accompanying affidavit as 'allow[ing] an unfettered and unlimited search' of appellant's cell phones"). The dissent takes on a similarly restrictive view, equating the result we reach as permitting an unfettered and unlimited search.

*Diaz* instructs us that it is sufficient here that the supporting affidavit states that the search was for evidence "relevant and material to the criminal investigation noted in this affidavit," and the affidavit and warrant listed specific types of data that likely contained such relevant and material evidence. *See Diaz*, 604 S.W.3d at 607. Because the warrant and supporting affidavit directly link the evidence being sought to the offense being investigated at the time the warrant was obtained, the search was not an overbroad general search. *See id. citing Farek v. State*, No. 01-18-00385-CR, 2019 WL 2588106, at *8 (Tex. App.—Houston [1st Dist.] June 25, 2019, pet. ref'd) (mem. op., not designated for publication). Accordingly, the second warrant leading the police to discover the child

pornography on appellant's cellphone was not "the fruit of the poisonous tree."

We therefore overrule appellant's sole issue.

### III. MODIFICATION OF THE JUDGMENT

We modify the trial court's judgment to delete the notation that appellant entered pleas of "guilty" and that terms of plea bargains were "without an agreed recommendation–court trial." We modify the judgments to indicate appellant's "not guilty" plea. We affirm the judgment as so modified. *See* Tex. R. App. P. 43.2(b); *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) ("[A]n appellate court has authority to reform a judgment to ... make the record speak the truth when the matter has been called to its attention by any source").


/s/    Randy Wilson
Justice

Panel consists of Justices Jewell, Spain, and Wilson (J. Spain, dissenting).

Do Not Publish — Tex. R. App. P. 47.2(b)