**Opinion issued May 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-22-00366-CR

————————————

### TODD MICHAEL GLOVER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 56th District Court
### Galveston County, Texas
### Trial Court Case No. 19-CR-2254

---

## O P I N I O N

A jury convicted appellant Todd Michael Glover of the first-degree felony offense of engaging in organized criminal activity and assessed his punishment at fifteen years' confinement plus a $10,000 fine.[1] In four issues on appeal, Glover

---

[1]    *See* TEX. PENAL CODE § 71.02(a)(5), (b)(3).

argues that: (1) the trial court erred by denying his motion to suppress evidence obtained from an illegal search of his cell phone; (2) the trial court erred by admitting extraneous offense evidence during the punishment phase; (3) the jury charge erroneously instructed the jury on the law of parole; and (4) the evidence was legally insufficient to sustain the jury's verdict.

Concerning Glover's first issue challenging the denial of the motion to suppress, Glover argues that the warrant affidavit supporting the cell phone search was conclusory. The State urges us to affirm, but it acknowledges that the affidavit is "very weak" and that it would be "easy enough for this Court to point out all of the deficiencies in the warrant affidavit and be done with it." We agree with Glover that the affidavit is conclusory and fails to satisfy the Fourth Amendment's constitutional requirements. The State does not dispute that the error was harmful, so a new trial is required. Our resolution of Glover's first issue is dispositive of this appeal.[2] Accordingly, we reverse and remand for a new trial.

---

[2] Our resolution of Glover's first issue is dispositive because the remaining issues would not provide Glover additional relief. Concerning Glover's fourth issue challenging the legal sufficiency of the evidence, Glover requests that this Court reverse his conviction, reform the judgment to show a conviction for the lesser-included offense of prescription fraud, and remand the case for a new trial on punishment. However, our resolution of Glover's first issue results in a remand for a new trial, which provides greater relief than Glover requests in his legal sufficiency challenge. Accordingly, we need not address Glover's second through fourth issues. *See* TEX. R. APP. P. 47.1.

**Background**

In 2019, a grand jury indicted Glover for the first-degree felony offense of engaging in organized criminal activity. *See* TEX. PENAL CODE § 71.02(a)(5), (b)(3). The indictment alleged that Glover intentionally or knowingly delivered a prescription for a controlled substance for a purpose other than a valid medical purpose, and Glover acted with two other individuals—Victoria Lyn Scales and Justin Cyr—pursuant to a common scheme or continuing course of conduct. The controlled substance was dextroamphetamine, the generic version of the drug known as Adderall. The indictment also alleged that Glover possessed or obtained Adderall by misrepresentation, fraud, or deception.

Before trial, Glover moved to suppress evidence collected from his cell phone. He alleged that a single-paragraph affidavit filed in support of the search warrant failed to establish probable cause to search his cell phone. According to the search warrant affidavit, which was executed by Louisiana law enforcement, Glover was investigated for the separate alleged offense of rape based on a text message sent to a female stating, "don't tell anybody what happened this past weekend." Louisiana police sought a warrant to search Glover's phone "to try and confirm/deny this text message, as well as[] obtain any other evidence that may be helpful to this investigation." A search of Glover's cell phone pursuant to the warrant revealed text messages that the State entered into evidence in this case to prove its allegations that

3

Glover engaged in organized criminal activity by delivering a prescription for a controlled substance for a purpose other than a valid medical purpose. The trial court denied the motion to suppress.

Multiple witnesses testified at trial, and the trial court admitted several exhibits into evidence, including the text messages. After the close of evidence, the jury found Glover guilty of the offense of engaging in organized criminal activity. The jury assessed Glover's punishment at fifteen years' imprisonment and a fine of $10,000. *See id.* § 12.32. This appeal followed.

**Motion to Suppress Evidence**

In his first issue, Glover contends that the trial court erred by denying his motion to suppress evidence obtained from a search of his cell phone. Glover argues that the affidavit in support of the search warrant failed to state probable cause for the search. This issue is dispositive of this appeal.

**A.     Standard of Review and Governing Law**

The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures by requiring police officers to first obtain a warrant based on probable cause before conducting a search or seizure. U.S. CONST. amend. IV; *see also* TEX. CONST. art. I, § 9 (requiring warrant describing probable cause to search any place or seize any person or thing). Probable cause exists when, looking at the "totality of the circumstances" stated in a sworn affidavit

4

supporting an application for a search warrant, there is a "fair probability" that evidence of a crime will be found at a particular location. *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022); *see also State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017). Probable cause is a "flexible, non-demanding standard." *Baldwin*, 664 S.W.3d at 130. Evidence obtained without probable cause in violation of the United States or Texas Constitutions is inadmissible as evidence against the accused at trial. TEX. CODE CRIM. PROC. art. 38.23(a); *see Utah v. Strieff*, 579 U.S. 232, 237 (2016) (stating that exclusionary rule encompasses both primary evidence obtained as direct result of illegal search and evidence later discovered and found to be derivative of illegal search, or "fruit of the poisonous tree") (citation omitted).

To protect the reasonable expectation of privacy that individuals have in the contents of their cell phones, police officers generally must obtain a warrant before searching the contents of a person's cell phone. *See Riley v. California*, 573 U.S. 373, 386 (2014); *State v. Granville*, 423 S.W.3d 399, 417 (Tex. Crim. App. 2014). Probable cause requires "a sufficient nexus between criminal activity, the things to be seized, and the place to be searched." *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *see State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) ("The core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding 'probable

cause' that a particular item will be found in a particular location."). Meeting this standard generally requires an affidavit that alleges specific facts showing a connection between the person's use of the cell phone and the offense, typically that the person used the cell phone "during the crime or shortly before or afterward." *State v. Baldwin*, 614 S.W.3d 411, 418 (Tex. App.—Houston [14th Dist.] 2020), *aff'd*, 664 S.W.3d 122 (Tex. 2022).

As a reviewing court, our task is to determine whether "'the magistrate had a substantial basis for concluding that probable cause existed' based on the four corners of the affidavit and reasonable inferences therefrom." *Moreno v. State*, 415 S.W.3d 284, 287 (Tex. Crim. App. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). An "affidavit is sufficient to establish probable cause if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed." *Baldwin*, 664 S.W.3d at 131–32 (citing *Gates*, 462 U.S. at 238–39).

Reviewing courts must give "great deference" to the magistrate's probable cause determination because of the constitutional preference for police officers to conduct searches with warrants. *Id.* at 130; *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011); *see also Gates*, 462 U.S. at 236. Thus, we must not analyze the affidavit in a "hyper-technical manner," but we instead must defer to all

6

reasonable inferences which a magistrate could have made. *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).

In conducting our review, we are constrained to the "four corners of the affidavit" to ensure that the magistrate had a "substantial basis" to conclude there was probable cause. *Baldwin*, 664 S.W.3d at 130. As with traditional searches not involving cell phones, "conclusory allegations alone are insufficient to support a finding of probable cause." *Id.* at 132. "[S]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* (quoting *Gates*, 462 U.S. at 239). "Suspicion and conjecture" do not establish probable cause. *Id.* at 135. Likewise, "[m]ere conclusory statements of an affiant's belief" also fail to pass muster. *Rodriguez*, 232 S.W.3d at 61. While reasonable factual inferences are permitted, "a magistrate may not baselessly presume facts that the affidavit does not support." *Foreman v. State*, 613 S.W.3d 160, 164 (Tex. Crim. App. 2020); *Elrod*, 538 S.W.3d at 556.

**B.    Analysis**

Detective Ron Martin of the Coushatta Police Department in Louisiana prepared the affidavit in support of the warrant to search Glover's cell phone. In relevant part, the Martin affidavit stated:

> I . . . was assigned this rape case for a follow up investigation. During my investigation information was obtained through interviews that

7

were conducted. Some of the information that was obtained, was after the incident happened, suspect Todd Michael Glover made contact with victim, [K.D.,] via text message. The message is alleged to say "don't tell anybody what happened this past weekend[.]" [K.D.'s] cellular phone is currently being searched at the Allen Parish Sheriff's Office Investigations Division (consent given) to help confirm or deny this text message. Later in the investigation an arrest warrant was obtained for Todd. Upon his arrest he possessed a cellular phone, to which I have in my possession now. It is my intensions [sic] to search Todd's phone to try and confirm/deny this text message, as well as[] obtain any other evidence that may be helpful to this investigation.

Glover argues that these facts are conclusory and cannot support probable cause. He argues that the affidavit fails to explain what the incident was and whether the text was sent in any timely proximity to "what happened this past weekend." He also argues that the affidavit is wholly conclusory because it "fails to provide any underlying facts that support it, including but not limited to when and with whom any interviews were conducted, exactly what information was obtained and from whom it was obtained, or why any such information led [Martin] to believe any crime had been committed and by whom against whom."

In its appellate brief, the State concedes that the affidavit is "very weak" and that it would be "easy enough for this Court to point out all of the deficiencies in the warrant affidavit and be done with it." Elsewhere, however, the State responds that the affidavit lays out the necessary facts, along with reasonable inferences, to support probable cause.

The Martin affidavit suffers from two major deficiencies, either of which would preclude a finding that probable cause existed to search Glover's cell phone. The first deficiency is the dearth of facts about the crime and the cell phone's connection to that crime. The Court of Criminal Appeals recently held that an affidavit offered in support of a search warrant must articulate a factual nexus between the phone to be searched and the criminal activity described in the affidavit. *Baldwin*, 664 S.W.3d at 123 (reversing conviction where affidavit supporting warrant for search of defendant's phone failed to supply "facts and reasonable inferences that establish a nexus between the device and the offense"). In *Stocker v. State*, the Fourteenth Court of Appeals followed *Baldwin* in holding that the trial court erred by denying a motion to suppress evidence obtained from a cell phone in a murder case where the affidavit (1) did not describe the alleged offense of murder, and (2) presented no "factual nexus between the phone and the murder." 656 S.W.3d 887, 902 (Tex. App.—Houston [14th Dist.] 2022, pet. granted).

The Martin affidavit fares no better. Although the affidavit describes the case under investigation as a "rape case" and gives the identity of an alleged victim, the affidavit provides no details regarding the alleged rape. Indeed, the State even acknowledges that "[t]he search warrant affidavit does not state that the victim or any other witness specifically identified [Glover] as the individual who committed the rape against the victim." Nor does the affidavit state when the rape occurred. *See*

*McLain*, 337 S.W.3d at 272 (stating that affidavit must state facts that are "so closely related to the time of the issuance of the warrant that a finding of probable cause is justified") (citation omitted). Without such information, the supposed text by Glover to the alleged victim—"don't tell anybody what happened this past weekend"—lacks a factual nexus to the alleged crime. The magistrate was not free to baselessly presume that the alleged rape occurred the weekend before the text was sent, or that Glover committed it. *See Foreman*, 613 S.W.3d at 164.

The second deficiency in the Martin affidavit is equally fatal. The affidavit fails to provide any details about where Martin *obtained* the information that (1) Glover had allegedly committed a rape; and (2) the supposedly incriminating text would be found on Glover's phone. The affidavit simply states that the "investigation information was obtained through interviews that were conducted." The affidavit never identifies who was interviewed or whether the person or persons interviewed were reliable or credible. And it certainly states no facts that would permit the magistrate to discern from the four corners of the affidavit that such individuals were credible or that their information was reliable.

These failures matter. The United States Supreme Court has forbidden the use of bare-bones affidavits and has emphasized that the issuing magistrate cannot rely on the wholly conclusory statements of the affiant. *Gates*, 462 U.S. at 239. In *Aguilar v. Texas*, the Court held that an officer's statement that "[a]ffiants have received

10

reliable information from a credible person and do believe" that heroin and other illegal drugs were being stored in a home was insufficient to establish probable cause for a search of the home. 378 U.S. 108, 109, 115–16 (1964). The "vice" in the affidavit was that the "'mere conclusion' that [the defendant] possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant." *Id.* at 113. The affidavit contained "no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein." *Id.* Nor did the affidavit contain an "affirmative allegation that the affiant's unidentified source spoke with personal knowledge." *Id.* Thus, the magistrate judge could not determine for himself "the persuasiveness of the facts relied on . . . to show probable cause." *Id.*

Whereas *Aguilar* created a two-prong test for affidavit sufficiency, the Court later abandoned that test in *Gates* to return to the "totality-of-the-circumstances analysis that traditionally informed probable-cause determinations." *See Duarte*, 389 S.W.3d at 355 (analyzing *Aguilar* and *Gates*). That "totality" analysis focuses on whether the affidavit's statements were sufficiently reliable for a finding of probable cause, considering the veracity, reliability, and the basis of the informant's knowledge and his information. *Gates*, 462 U.S. at 230. In explaining how courts should undertake that analysis, *Gates* identified *Aguilar* as an example of a "bare-bones" affidavit illustrating the "limits beyond which a magistrate may not venture in issuing a warrant." *Id.* at 239. The Court reasoned that an affidavit must provide

11

the magistrate with a substantial basis for probable cause, and an "officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home[] is . . . inadequate.'" *Id.* (quoting *Aguilar*, 378 U.S. at 108).

The Martin affidavit contains even less information about the affiant's sources than the inadequate affidavit in *Aguilar*. The Martin affidavit simply says that "interviews" were conducted—whether of one person or more persons, we do not know. And unlike in *Aguilar*, the Martin affidavit does not state even in cursory fashion whether anyone interviewed was credible or whether their information was reliable.

Furthermore, the Martin affidavit does not say whether any interviewee was a private citizen or a criminal informant. This distinction is significant. *Duarte* recognized that a named "citizen-informer is presumed to speak with the voice of honesty and accuracy." 389 S.W.3d at 356. "[R]igorous scrutiny of the basis of his knowledge" is therefore "unnecessary." *Gates*, 462 U.S. at 233–34. But a criminal informant enjoys no such presumption. Rather, "tips from anonymous or first-time confidential informants of unknown reliability must be coupled with facts from which an inference may be drawn that the informant is credible or that his information is reliable." *Duarte*, 389 S.W.3d at 358. Relying on this distinction, *Duarte* ultimately held that the affidavit failed to provide the magistrate with a

12

substantial basis for concluding that probable cause for a search existed where a police officer relied upon a first-time informant's hearsay statement that was unaccompanied by any facts from which an inference of credibility could be drawn. *Id.* at 358–59. The affidavit's description of the informant as a "credible individual" did not suffice. *Id.* at 360.

As in *Duarte*, it was incumbent upon the magistrate to have some basis to determine whether the interviewees were credible, but the Martin affidavit supplied none. Consequently, the Martin affidavit is nothing more than a "mere ratification of the bare conclusions" of other individuals, or perhaps just one individual, whom we know nothing about. *See id.* at 354; *see also Ware v. State*, 724 S.W.2d 38, 41 (Tex. Crim. App. 1986) (finding that affidavit was insufficient under both *Aguilar* test and *Gates* "totality of the circumstances" analysis where "[n]o information" was "given as to the means by which the affiant obtained the information, or the underlying circumstances surrounding its acquisition").

Decisions from our sister intermediate courts likewise confirm the Martin affidavit's insufficiency. For example, the Texarkana Court of Appeals reversed a child-pornography conviction because the "bare-bones" search warrant affidavit "provide[d] no facts on which the magistrate could conclude" that the affiant's source was "reliable," and the affidavit failed to "contain any corroboration of the informant's information or other indicia of reliability." *Elardo v. State*, 163 S.W.3d

13

760, 766 (Tex. App.—Texarkana 2005, pet. ref'd). That affidavit contained far more information about the affiant's source than the Martin affidavit does. It stated:

> A reliable source provided affiant with information that he/she has been in the residence described above within last 12 hours and has seen the visual material on a computer in the above described residence. The reliable source also witnessed the party named above, viewing the visual material at that time. The reliable source advised that he/she has known the above party for a number of years and has been told on several occasions that the party above keeps this type of visual material in the residence.

*Id.*

Similarly, in *Barraza v. State*, the Corpus Christi–Edinburg Court of Appeals reversed a conviction where the search-warrant affidavit described the affiant's source as "a reliable and credible confidential informant," which was a "conclusory statement as to the reliability of the informant." 900 S.W.2d 840, 842 (Tex. App.—Corpus Christi–Edinburg 1995, no pet.). The court reasoned that while "no authority requires an affiant's basis for finding an informant's reliability to be of a certain nature, affiant is required, nevertheless, to actually have some basis for concluding that the informant is credible concerning the information supplied." *Id.* at 843. No such basis was present in *Barraza*, and none is present here.

Accordingly, we conclude that the Martin affidavit failed to provide the magistrate with a substantial basis for determining that probable cause existed to search Glover's cell phone. *See Baldwin*, 664 S.W.3d at 130; *Moreno*, 415 S.W.3d at 287. We hold that the trial court erred by denying the motion to suppress.

14

**Reversible Error**

Because the denial of Glover's motion to suppress and the subsequent admission into evidence of the fruits of the unlawful search of his cell phone violated Glover's Fourth Amendment rights, we consider whether admission of this evidence constituted reversible error under Rule of Appellate Procedure 44.2(a). For purposes of constitutional error, Rule 44.2(a) requires that the judgment and conviction be reversed "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 106 (Tex. Crim. App. 2001) ("The Supreme Court has concluded that the Fourth Amendment requires exclusion of evidence obtained in violation thereof and has held that requirement applicable to the States by the Fourteenth Amendment. Therefore, we hold that the proper harm analysis in this case is the constitutional one of Rule of Appellate Procedure 44.2(a).") (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)).

The question is whether the error "adversely affected the integrity of the process leading to the conviction," not whether "the jury verdict was supported by the evidence." *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010) (quotation omitted). Accordingly, we focus "not upon the perceived accuracy of the conviction or punishment, but upon the error itself in the context of the trial as a whole, in order to determine the likelihood that it genuinely corrupted the fact-

finding process." *Snowden v. State*, 353 S.W.3d 815, 819 (Tex. Crim. App. 2011). We must reverse unless we determine beyond a reasonable doubt that the error did not "contribute" to the defendant's conviction or punishment. *See* TEX. R. APP. P. 44.2(a); *Wells v. State*, 611 S.W.3d 396, 410 (Tex. Crim. App. 2020). A determination of harmless error is, at its heart, a conclusion that the error could not have affected the jury. *Snowden*, 353 S.W.3d at 819.

In determining whether an error of constitutional dimension contributed to the conviction or punishment, we may consider factors including but not limited to "the nature of the error (e.g., erroneous admission or exclusion of evidence, objectionable jury argument, etc.), whether the error was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to the error in the course of its deliberations." *Wells*, 611 S.W.3d at 410 (citing *Snowden*, 353 S.W.3d at 822). We must also consider any and every circumstance apparent in the record that logically informs an appellate determination whether "beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment." *Snowden*, 353 S.W.3d at 822 (quoting TEX. R. APP. P. 44.2(a)).

Here, State's Exhibit 10, which the trial court admitted into evidence, constituted nineteen pages of incriminating text messages that were recovered from the search of Glover's cell phone. These texts are the "fruit of the poisonous tree" with respect to the unconstitutional search. *See Strieff*, 579 U.S. at 237; TEX. CODE

16

CRIM. PROC. art. 38.23(a). Moreover, the State focused extensively on the text messages throughout the rebuttal portion of its final argument in urging the jurors to convict Glover. The following are excerpts from the State's closing:

- You have three people acting in concert to commit the same offense. And they're not just working back and forth individually, they're sharing among themselves. You can see that in the text messages.

- When you look at the text messages here, they should clear up any doubt as to what was going on.

- Beyond that, look at Page 58, Victoria message: Please write me a script for Adderall today. Page 63, you see a variety of messages where Victoria is asking for Adderall. And then you get down to the bottom, "You dumb B. I already sent the script with Justin." Think [Glover] is not providing Adderall scripts for Victoria? That's what they're discussing right there explicitly.

- This was a continuing course of practice among the three of them. And that's what you see here in these messages.

- Ladies and gentlemen, this case is pretty black and white. What more evidence could we possibly bring you? We have text messages among the parties discussing the prescriptions.

"The State, as the beneficiary of the error, has the burden of proving that the constitutional error was harmless beyond a reasonable doubt." *Wells*, 611 S.W.3d at 411 (citing *Williams v. State*, 958 S.W.2d 186, 194 n.9 (Tex. Crim. App. 1997), and *Deck v. Missouri*, 544 U.S. 622, 635 (2005)). On appeal, the State does not argue that the error was harmless, so it has not met its burden. *See id.*; *Merritt v. State*, 982 S.W.2d 634, 636 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (stating that, under Rule 44.2(a), "the 'default' is to reverse unless harmlessness is shown" and

"if neither party does anything, the case will be reversed," therefore Rule 44.2(a) "requires the State to come forward with reasons why the appellate court should find the error harmless").

The State cannot rely upon this Court to carry the State's burden of proof. As the Texarkana Court of Appeals reasoned, "for us to independently review the evidence to evaluate" the issue of harm "when the State offered nothing to meet its burden would undermine the State's burden of proof requirement" and "place us in the position of being an advocate for the State." *Lamb v. State*, 603 S.W.3d 152, 162 n.16 (Tex. App.—Texarkana 2020, no pet.) (citations omitted). Thus, we need not independently evaluate the issue of harm in light of the State's failure to do so.[3] But if such an analysis were necessary, we would conclude that the error was not harmless, given the significance of the text messages in evidence and in the State's closing argument. *See Love v. State*, 543 S.W.3d 835, 857–58 (Tex. Crim. App. 2016) (concluding that erroneous admission of text messages was not harmless beyond reasonable doubt where State repeatedly alluded to them during final

---

[3] The State also argues for the first time on appeal that the text messages were properly admitted into evidence because Glover consented to the search of his phone, but the State nevertheless concedes that the "record in this case does not expressly show by clear and convincing evidence that [Glover] voluntarily consented to the search of his cell phone." *See Corea v. State*, 52 S.W.3d 311, 316 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) ("When relying upon consent to justify the lawfulness of a search, the State has the burden to prove by clear and convincing evidence that the consent was freely and voluntarily given."). Accordingly, we conclude that the State has not satisfied its burden to establish that Glover freely and voluntarily consented to the search of his cell phone. *See id.*

18

argument while urging jurors to convict defendant). We hold that the trial court's error in denying the motion to suppress constituted reversible error. We sustain Glover's first issue.

## Conclusion

We reverse the trial court's judgment of conviction and remand to the trial court for a new trial.

April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.

Goodman, J., dissenting.

Publish. *See* TEX. R. APP. P. 47.2(b).